UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARLA W. HUNTER, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 09-cv-758 (NLH)(KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MARK FILIP, Acting Attorney | : | |
| General, U.S. Department of | : | |
| Justice, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**APPEARANCES**</u>:

Dennis L. Friedman, Esquire
1515 Market Street
Suite 714
Philadelphia, PA 19102-1907
*Attorney for Plaintiff*

John Andrew Ruymann, Esquire
Office of the U.S. Attorney
402 East State Street
Suite 430
Trenton, N.J. 08608
*Attorney for Defendant*

<u>**HILLMAN, District Judge**</u>

Plaintiff, Marla W. Hunter, filed suit against Defendant, Mark Filip, then the Acting Attorney General for the United States Department of Justice, alleging that she was impermissibly terminated from her federal employment on the basis of retaliation. Hunter also seeks a review of the administrative record culminating in the Merit Systems Protection Board's affirmance of her removal. Defendant now moves for summary

judgment against Hunter's claims.

For the reasons expressed below, Defendant's Motion for Summary Judgment will be granted.

## I.   JURISDICTION

Plaintiff has brought forth claims under federal law.  This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

## II.   BACKGROUND

Marla W. Hunter had been employed with the United States Bureau of Prisons ("BOP") since 1996.  That year, she began her employment with the BOP as a secretary at the Federal Correctional Institution ("FCI") in Fairton, New Jersey.  Eventually, Hunter was promoted to the position of maintenance worker supervisor.  As part of her duties, she supervised federal inmates who performed maintenance and cleanup services.  Among those inmates under Hunter's supervision was Michael Giannone. Before leaving FCI Fairton, Hunter returned to her original position as a secretary.

In February 2001, Hunter transferred to the FCI in Fort Dix, New Jersey, where she returned to the position of a maintenance worker supervisor.  On December 23, 2003, however, Captain L.D. Sturgill, a correctional officer supervisor at FCI Fairton, screened a letter addressed to Giannone that discussed Hunter's possible return to her former position at FCI Fairton.  Based on

2

this discovery, Charles J. DeRosa, warden of FCI Fort Dix, was notified that Hunter may have violated the Standards of Employee Conduct by impermissibly communicating with an inmate.  As a result, the Office of Internal Affairs ("OIA") commenced an investigation.  During the course of the investigation, Hunter was reassigned by her supervisor, Chip Moran, a facilities manager, to the position of information receptionist on January 21, 2004.

In early February 2004, the OIA Investigative Report was issued.  The report concluded:

> The OIA investigation revealed Hunter engaged in an Inappropriate Relationship with an Inmate.  Ten letters were received by inmate Giannone which contained information about Hunter's personal and professional life which she admitted writing.  Additionally, Hunter admitted the email address on one of the letters was hers.  Therefore, the allegation of Inappropriate Relationship with an Inmate sustained against Hunter.

(Pl. Compl. at 4; Def. Mot., Second Ruymann Decl., at 459).  On April 7, 2004, Hunter received a notice of proposed removal from Moran containing seven charges involving purported inappropriate relationships with an inmate and an inmate's family member, failure to report those contacts, and unauthorized dissemination of information.  According to Hunter's complaint, the charges stemmed from eight e-mails and two letters sent to Giannone by his sister-in-law and aunt that contained information provided by Hunter.

3

On June 9, 2004, Warden DeRosa terminated Hunter's employment at FCI Fort Dix.  In reaching the decision to remove Hunter, DeRosa briefly set forth some of the contents of Hunter's communications to Giannone and explained that he had considered relevant documentation, statements, and evidence available to him.  DeRosa balanced numerous factors and determined that through her actions Hunter had damaged her credibility, integrity, and efficacy as a correctional worker and was no longer suitable to work at FCI Fort Dix.

In response to her removal, Hunter filed a grievance. Hunter argued that the termination constituted excessive punishment and retaliation for her ongoing Equal Employment Opportunity ("EEO") activity concerning discrimination that allegedly occurred during her employment with FCI Fairton. Ultimately, arbitration proceedings were held to resolve the grievance.  The arbitrator ruled against Hunter, denying her grievance and her retaliation claim and sustaining the termination.  The arbitrator concluded retaliation did not lead to Hunter's termination, Hunter was guilty of all charges against her, and her termination was for just cause and was neither excessive nor unreasonable.

Hunter appealed the arbitrator's decision to the Merit Systems Protection Board (or, "MSPB").  On October 29, 2008, the MSPB sustained the arbitrator's decision and the removal,

affirming that the charges were legitimate, that the retaliation claim was unfounded, and that the penalty of termination was reasonable.  Hunter then filed her discrimination claim with the United States Equal Employment Opportunity Commission ("EEOC").  Again, Hunter asserted that she was terminated in retaliation for her prior EEO activity.  On January 15, 2009, the EEOC issued its decision, concurring with the MSPB's finding of no discriminatory retaliation.

About a month later, in February 2009, Hunter filed the present suit against Defendant, Mark Filip, the Acting Attorney General for the United States Department of Justice,[1] in this Court.  Hunter alleges that she was terminated as retaliation for her previous EEO activity, in contravention of Title VII, and that the decision to remove her from employment was arbitrary and capricious, procedurally flawed, and unsupported by substantial evidence.  Defendant now moves for summary judgment.

**III. DISCUSSION**

    **A.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[1] In Defendant's briefs and submissions, the named defendant is identified as Eric H. Holder, Jr., the current Attorney General.

the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56.

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the nonmoving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting
Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.,
477 U.S. at 323.  Once the moving party has met this burden, the
nonmoving party must identify, by affidavits or otherwise,
specific facts showing that there is a genuine issue for trial.
Id.  Thus, to withstand a properly supported motion for summary
judgment, the nonmoving party must identify specific facts and
affirmative evidence that contradict those offered by the moving
party.  Anderson, 477 U.S. at 256-57.  A party opposing summary

6

judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Title VII Retaliation**

Defendant argues that Hunter cannot establish a prima facie case of retaliation under Title VII, specifically the requisite causal connection between Hunter's protected activity and the adverse employment action taken against her.  The temporal proximity of the protected activity and the termination, Defendant submits, cannot sufficiently establish causality, nor does any evidence show that the decision-makers responsible for her termination harbored any animus or antagonism toward her.  Alternatively, Defendant concludes that Hunter cannot countervail the legitimate, non-discriminatory reason for her termination, based on her inappropriate communications with an inmate, or demonstrate pretext or discrimination.

Hunter, in turn, challenges the veracity and accuracy of the reasons for her termination.  For example, she believes that, in light of the circumstances, her punishment was unduly harsh and excessive and thus illustrates the retaliatory animus that provoked the decision to terminate her.  Contrary to Defendant's representations, Hunter submits that even after the charges were made against her, she continued to serve in a sensitive position with the prison and exhibited remorse for her mistakes -- two

facts that undermine reasons provided for her removal.  Further,
Hunter contends that no evidence corroborates Warden DeRosa's
conclusions that her supervisors lost confidence in her, that
information she provided to Giannone actually threatened or
breached the security of the prison, that no mitigating factors
were applicable, and that an appropriate punishment could not
have involved less drastic sanctions.

Pursuant to Title VII,

> It shall be an unlawful employment practice
> for an employer to discriminate against any of
> his employees . . . because he has opposed any
> practice made an unlawful employment practice
> by this title, or because he has made a
> charge, testified, assisted, or participated
> in any manner in an investigation, proceeding,
> or hearing under this title.

42 U.S.C. § 2000e-3(a).  "To establish a *prima facie* case of
retaliation under Title VII, a plaintiff must tender evidence
that: (1) she engaged in activity protected by Title VII; (2) the
employer took an adverse employment action against her; and (3)
there was a causal connection between her participation in the
protected activity and the adverse employment action."  Moore v.
City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)
(citation and internal quotation marks omitted).

> If the employee establishes this *prima facie*
> case of retaliation, the familiar *McDonnell
> Douglas* approach applies in which the burden
> shifts to the employer to advance a
> legitimate, non-retaliatory reason for its
> conduct and, if it does so, the plaintiff must
> be able to convince the factfinder both that

8

> the employer's proffered explanation was
> false, and that retaliation was the real
> reason for the adverse employment action.

<u>Id.</u> at 342 (citation and internal quotation marks omitted). "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." <u>Id.</u>

The parties do not dispute that Hunter had engaged in an activity protected by Title VII, that is, the filing of an EEO complaint grieving about discrimination, or that she suffered a materially adverse employment action when she was terminated from her job. Instead, Defendant challenges the existence of any causal connection between that protected activity and her adverse employment action.

Hunter initiated an EEO complaint on the grounds of discrimination in or around 1999, while she was an employee at FCI Fairton. During her deposition, Hunter explained that she had been harassed and treated unfairly by virtue of being a female and a minority. In connection with her complaint, she also filed a lawsuit. According to Hunter, Warden DeRosa terminated her because of the EEO complaint, as evidenced by a fax sent from Jack Jenkins, a human resource manager at FCI Fort Dix, to Christina Murphy Griffith, the deputy chief of Labor and Management Relations with the BOP. In the fax, dated January 14, 2004, Jenkins asked Griffith about Hunter's disciplinary case and

9

references her ongoing EEO activity.  The fax reads:

> The Warden asked me to contact you to see how you felt about [the] case I just faxed you.  It involves an employee who transferred here from Fairton, and over the past two 2 years has maintained a relationship with a Fairton inmate via mail.  The Warden would like to know if you feel there is enough there to recommend removal.  He would also like to know if you feel we should temporarily assign to a position with no inmate contact until this is resolved.  This is a sensitive case because she has an EEO complaint against staff at Fairton, and OIA was aware of this when they conducted the investigation and her interview on Tuesday, 1/13/04.  As always, thank-you very much for your help.

(Def. Mot., First Ruymann Decl., Exh. 1, MH 7).  At Hunter's deposition, Defendant's counsel asked, "Do you contend that the warden's decision to remove you from federal service on June 9, 2004 was related in any way to your EEO complaint[?]"  (Def. Mot., First Ruymann Decl., Exh. 1, Hunter's Dep., at 39).  Hunter replied, "Yes."  (Id.)  When asked for the basis of that opinion, Hunter stated, "The fax."  (Id. at 40).

Defendant argues that in spite of Warden DeRosa's knowledge of Hunter's EEO activity, nothing in the record causally connects his decision to terminate Hunter with the fact that she had filed the EEO complaint.  On the contrary, Defendant submits that DeRosa's handling of the matter, and the acknowledgment of Hunter's ongoing EEO activity, demonstrates the caution and prudence with which DeRosa and his staff acted.  Moreover, Defendant asserts a legitimate, non-discriminatory reason for

Hunter's termination: her impermissible communications with an inmate and his family.

The Court agrees that nothing in the record sufficiently demonstrates, as a matter of law, the causal connection between Hunter's protected activity and her termination.  Hunter predicates her Title VII claim on the fact that she had filed an EEO complaint and, aware of that complaint, Warden DeRosa terminated her employment.  Based on those facts, Hunter attempts to infer retaliation.  That inference, however, is too tenuous and attenuated to prove a prima facie case.

"[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  When the timing of the adverse employment action is "'unusually suggestive'" of retaliatory motive, then a causal link may be inferred.  Id. (quoting Robinson, 120 F.3d at 1302).  Absent temporal proximity, however, "courts may look to the intervening period for other evidence of retaliatory animus."  Id. at 504; see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) ("In cases such as this one, where the temporal proximity is not so close as to be unduly suggestive, we have recognized that timing plus other

11

evidence may be an appropriate test[.]" (citation and internal quotation marks omitted)).

In this case, Hunter filed an EEO complaint alleging discrimination in 1999, while she was employed with FCI Fairton. In 2004, approximately five years after she commenced her EEO activity, Hunter was terminated from FCI Fort Dix.  Between that time, Hunter had left the facility and the colleagues that compelled her EEO complaint and transferred to a different facility, with different colleagues who presumably had no involvement with the prior discrimination.  At FCI Fort Dix, she had been promoted to a better position.  Based on those facts, there is simply insufficient temporal or factual proximity between the events to trigger a reasonable inference of retaliation.  See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (finding no temporal proximity unduly suggestive of retaliation with two months between protected activity and termination); Thomas, 351 F.3d at 114 (finding that three weeks between filing of complaint and termination did not present suggestive temporal proximity). Moreover, Hunter alleges no facts to illustrate any antagonism, animosity, or retaliatory animus at play during her tenure at FCI Fort Dix.  In fact, at her deposition, Hunter recalled that she had shared a collegial relationship with Chip Moran, the facility manager who issued her proposed notice of removal, and Warden

DeRosa, who ultimately terminated her.  Hunter also testified
that none of her supervisors, including DeRosa and Moran, ever
gave her any reason to believe that she would be treated
differently because she had filed an EEO complaint.[2]

Nevertheless, assuming *arguendo* that Hunter has established
a prima facie cause of action, Defendant has articulated a
legitimate, non-discriminatory reason for her termination.  In
response, Hunter does not set forth ample evidence, as a matter
of law, to create a genuine issue of material fact as to pretext.

In the proposed notice of removal, dated April 7, 2004,
Moran recommended that Hunter be removed from her position as a
maintenance worker supervisor.  To support his proposal, Moran
outlined about ten communications, multiple e-mails and letters,
that Hunter had shared with Michael Giannone, through his sister-
in-law, Susan Giannone, without having reported the contacts to
the proper authorities.  According to the notice, the
communications had occurred for about two years, beginning no
later than October 17, 2001.  In her correspondence, Hunter
informed Giannone of numerous events, some of which transpired at
FCI Fort Dix, including: "a murder/suicide involving a Food
Service employee, . . . an institution disturbance during a

---

[2] Hunter even testified that, to her knowledge, at the time
Moran issued the proposed notice of removal, he did not know that
she had engaged in EEO activity.  Likewise, Hunter also stated
that she did not perceive any connection between the proposed
notice of removal and her EEO activity.

recent blackout, . . . inadequacies of the staff recall system, .

. . the assault of a staff member, . . . stolen knives from the

kitchen, and . . . a potential group inmate assault." (Def.

Mot., First Ruymann Decl., Exh. 1, MH 5).  Moran concluded that

those impermissible communications with an inmate and his family,

along with the failure to report them and the dissemination of

sensitive information, violated the Standards of Employee Conduct

and were suitable grounds for removal.

In a letter dated June 9, 2004, Warden DeRosa reiterated the

charges made in the proposed notice of removal.  Ultimately,

DeRosa decreed:

> After careful consideration, I find the
> charges fully supported by the evidence in the
> adverse action file.  Your removal is
> warranted and in the interest of the
> efficiency of the service.  Your actions in
> this matter have clearly destroyed your
> credibility and effectiveness as a
> correctional worker.  A critical element of
> any correctional worker's job is to strike a
> proper relationship with those in their
> charge.  It is critically important, to
> maintain your effectiveness, that you avoid
> any situation which could be perceived as
> being improperly involved with inmates or as
> showing favoritism to one inmate or group of
> inmates over another.  The fact that the
> evidence shows that you maintained over a two-
> year correspondence with an inmate and his
> sister-in-law, discussing security issues
> pertaining to the institution and disclosing
> information regarding employees, is
> inappropriate and will not be tolerated.  This
> matter has seriously compromised your
> integrity and neutrality and serious questions
> and concerns would always loom over your
> continued employment.  It is my decision that

> you be removed from your position effective
> midnight June 9, 2004.

(Def. Mot., First Ruymann Decl., Exh. 1, MH 6).  DeRosa continued

by considering several factors and determining that, *inter alia*,

Hunter's misconduct constituted a serious breach of trust and had

caused her superiors to lose confidence in her abilities to do

her job, and that no mitigating factors or alternative sanctions

countervail the decision to remove her.

Hunter admitted in her affidavit produced during the OIA

investigation that she wrote e-mails and letters to Giannone and

that those correspondences were sent along to him through his

sister-in-law.  Subsequently, in her testimony during the

arbitration hearings, she acknowledged that her conduct violated

the policies, regulations, and standards that govern employee

conduct at FCI Fort Dix.[3]

Certainly, Hunter's impermissible communications constitute

a legitimate, non-discriminatory reason for her termination.

Hunter admits to her misconduct.  In rebuttal, however, she

challenges the severity of the punishment, *i.e.*, termination, and

believes that specific findings made by DeRosa to justify the

termination are specious, fabricated, or unfounded.  For example,

in the termination letter dated June 9, 2004, DeRosa informed

---

[3] Other admissions or acknowledgments made by Hunter
regarding her communications with the Giannones are mentioned,
*infra*, with respect to the Court's examination of the
administrative record.

Hunter that "your misconduct has caused your superiors to lose confidence in your ability to do your job," "the penalty is in line with sanctions I have imposed on others for substantially similar misconduct," and "there are/were no mitigating factors." (Def. Mot., First Ruymann Decl., Exh. 1, MH 6). Hunter takes umbrage with these findings and what she perceives as the lack of evidence to support them. Among other things, Hunter contests the assertion that her superiors lost confidence in her when, during the pendency of the investigation, she was reassigned to another position in which she arguably had even greater responsibility and access to sensitive information, and performed well in that role. Hunter also points to Defendant's answers to interrogatories to belie the assertion that others have been similarly punished for similar misconduct. In addition, she believes DeRosa ignored several mitigating factors in her favor, such as her prior work record, and that he exaggerated, without any proof or reason, the severity and consequences of her misconduct.

Collectively, Hunter's contestations may raise legitimate questions as to some of Warden DeRosa's determinations. However, the fact remains that Hunter admitted to most of her misdeeds and evidence substantiated those charges against her. Hunter simply disagrees with DeRosa's assessment of the relevant factors, and the inferences and conclusions drawn therefrom, which led to her

16

termination.  Nevertheless, given Hunter's misconduct and the reasonableness of DeRosa's findings, her objections to those findings cannot demonstrate pretext sufficient to suggest retaliatory animus.

After all, in his deposition, DeRosa explained that Hunter's reassignment to receptionist, along with the proposed notice of removal prepared by Moran, evinced the lack of confidence that her superiors had in her and that, for whatever responsibilities she may have had during the ongoing investigation, the position was intended to separate her from having any supervision over inmates, as she previously had.  DeRosa also reiterated throughout his deposition that the decision to terminate Hunter was predicated upon the severity of her offense, the longevity and continued concealment of the offense, and the dissemination of sensitive information.  Consistent with those statements, DeRosa cited the same or similar reasons in the termination letter as reasons for Hunter's termination.  Nothing adduced by Hunter undermines those representations; rather, only mere conjecture and speculation, grounded in unwarranted inferences, enables Hunter to surmise that her EEO activity must have had something to do with her termination.  Though the existence of the EEO activity and the occurrence of Hunter's termination are indisputable, no affirmative link between the two is reasonably plausible based on this record.

Again, some of DeRosa's findings may or may not be susceptible to criticism. But the possible infirmity of some of DeRosa's findings does not negate the significance of his other findings, coupled with Hunter's admissions of misconduct, and the absence of any evidence to prove retaliation. In the end, Hunter cannot defeat summary judgment merely because DeRosa may have construed or weighted factors in a manner in which she disagrees. See Atkinson v. Lafayette College, 460 F.3d 447, 454 (3d Cir. 2006) ("The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." (citations, internal quotation marks, and brackets omitted)); Watson v. SEPTA, 207 F.3d 207, 222 (3d Cir. 2000) (noting that an employer may "take an adverse employment action for a reason that is not 'true' in the sense that it is not objectively correct" so long as the employer honestly and sincerely believes that its reason is correct); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). To create a

18

genuine issue of material fact that overcomes summary judgment, Hunter has to show "'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"  Krouse, 126 F.3d at 504 (quoting Fuentes, 32 F.3d at 765).  She has not carried that burden of persuasion.[4]

Therefore, for the reasons stated above, Defendant's Motion for Summary Judgment is granted.

## C.   Merit Systems Protection Board

In her complaint, Hunter also "seeks a record review of the non-discrimination component of this lawsuit," averring that "the decision to terminate her employment must be set aside because the actions, findings, conclusions and decisions of the agency were" arbitrary and capricious, obtained without proper procedures, and unsupported by substantial evidence.  (Compl. at 6-7).  Defendant moves for summary judgment against this claim, asserting that the Merit Systems Protection Board properly

---

[4] Hunter also is perturbed by Defendant's failure to present Warden DeRosa and Moran as witnesses as part of its case-in-chief during the arbitration hearings.  Their absence, says Hunter, exemplifies the paucity of evidence to support DeRosa's removal decision.  Certainly, while their testimony may have bolstered Defendant's case, the lack of any testimony by DeRosa or Moran does not offset the other evidence in the record, including the proposed notice of removal, the termination letter, the OIA investigation report, and Hunter's own admissions.  Moreover, irrespective of their testimony, Hunter does not adduce any evidence to affirmatively prove her retaliation claim.

reviewed the arbitrator's decision and correctly affirmed it.  In turn, Hunter opines that summary judgment on her purported non-discrimination claim is inappropriate given the dearth of evidence and reasons in the record to support Warden DeRosa's representations.  Further, because DeRosa's credibility and retaliatory animus are questions reserved for the jury, Hunter submits, the Court cannot determine the propriety of her discharge at this time.

For a "mixed appeal" in which the plaintiff alleges both a claim appealable to the MSPB and a claim of discrimination or reprisal, the case may be brought before a federal district court.  Stone v. Napolitano, 2009 U.S. Dist. LEXIS 62407, at *9 (E.D. Pa. Jul. 21, 2009); see also Makky v. Chertoff, 489 F. Supp. 2d 421, 428 (D.N.J. 2007) ("This Court has jurisdiction to review the determinations of the MSPB because this is a 'mixed case,' one that contains allegations of employment discrimination as well as claims of procedural violations." (citing 5 U.S.C. § 7703(b)(2))).  To deem agency action unlawful and set aside a decision of the MSPB concerning a non-discrimination claim, a district court must review the administrative record and determine whether any of the agency's actions, findings, or conclusions are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having

been followed; or (3) unsupported by substantive evidence." 5
U.S.C. § 7703(c); see also Makky, 489 F. Supp. 2d at 428-29.

The plaintiff-employee bears the burden to prove that the
agency's decision was erroneous. Clark v. U.S. Postal Serv., 989
F.2d 1164, 1167 (Fed. Cir. 1993). "Under the arbitrary and
capricious standard, courts will defer to the MSPB decision
unless the penalty is so harsh or disproportionate to the offense
as to be an abuse of discretion." Cohen v. Austin, 861 F. Supp.
340, 343 (E.D. Pa. 1994) (citation and internal quotation marks
omitted). Further, substantial evidence is "more than a mere
scintilla but may be somewhat less than a preponderance of the
evidence," and is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Harold v.
Barnhart, 450 F. Supp. 2d 544, 551 (E.D. Pa. 2006) (citations and
internal quotation marks omitted). "Reviewing courts should not
generally inquire into the wisdom of the agency's personnel
decisions or substitute its own judgment for that of the agency
when considering personnel decisions because such decisions are
usually within the competence and discretion of the executive
officials." Cohen, 861 F. Supp. at 343; see also U.S. Postal
Serv. v. Gregory, 534 U.S. 1, 6-7 (2001) (noting that the
arbitrary and capricious standard for reviewing MSPB decisions is
"extremely narrow, and allows the [MSPB] wide latitude in
fulfilling its obligation to review agency disciplinary actions,"

thereby precluding a court from "substitut[ing] its own judgment for that of the [MSPB]" (internal citation omitted)).

In his decision, the arbitrator concluded, *inter alia*, that no proof beyond Hunter's own conjecture evinced any connection between her termination and retaliatory or discriminatory motivations.  The arbitrator found that, for the most part, Hunter admitted to the allegations against her, and that her disagreements with the charges and facts alleged were without merit or significance.  As a result, the arbitrator found Hunter guilty of all charges.  Given the severity of her misconduct and her awareness of and justifications for it, the arbitrator determined that the penalty of termination was appropriate.  He explicitly accepted Warden DeRosa's consideration of the relevant factors, as enumerated in the termination letter, that justified Hunter's removal.

In its Opinion and Order dated October 29, 2008, the MSPB affirmed the arbitrator's decision that sustained the charges against Hunter and the removal from her employment.  The MSPB held that the arbitrator did not err as a matter of law when he (1) sustained the charges against Hunter and found that discipline for her misconduct promoted the efficiency of the service, (2) found that Hunter did not establish her retaliation claim, and (3) found that the arbitrator considered, and reasonably weighed, the relevant factors in determining the

propriety of Hunter's penalty.

Having independently reviewed the decisions of the
arbitrator and the MSPB and the administrative record, the Court
finds that the decisions by both the arbitrator and the MSPB were
reasonable and sufficiently supported by the record.

For many of the reasons stated in connection to the Title
VII retaliation claim, *supra*, the Court agrees that substantive
evidence supports the finding that Hunter violated rules and
regulations governing her conduct.  Hunter, herself, admitted as
much.  During the arbitration hearing, Hunter affirmed that she
had corresponded with Michael Giannone through his sister-in-law,
Susan Giannone.  To explain why she sent messages to Michael
Giannone through a third party, Hunter replied, in part, "I knew
we couldn't do that" -- an apparent acknowledgment of the rules
prohibiting personal contact with an inmate.  (Def. Mot., Second
Ruymann Decl., at 537).  When asked if she knew that she should
not have sent any of the e-mails or letters to Giannone, she
again affirmed and added, "I knew it went against the Code of
Ethics."[5]  (Id.).  Communications forwarded from Hunter to
Michael and Susan Giannone are included in the administrative
record.

Moreover, on this appeal, Hunter does not present any

_____

[5] Later in her deposition, Hunter recalled her acknowledgment
to Warden DeRosa of the seriousness of the charges against her.

23

convincing reason to question the reasonableness and adequacy of, or adherence to, the agency's procedures.  And, of course, this Court cannot find any fault with the dismissal of Hunter's retaliation claim because this Court, too, has held that she failed to provide the requisite evidence to advance that cause of action.

With respect to Hunter's termination from her federal employment, the Court cannot find that her penalty was unduly excessive or that the consideration of the relevant factors was in any way arbitrary, capricious, or contrary to law.  Rather, the MSPB's analysis of the factors, as originally considered and weighed by DeRosa in the termination letter and accepted by the arbitrator, is persuasive on this point.

Again, most of Hunter's alleged misconduct is undisputed.  Though she disagreed with her removal, Hunter recognized that she violated rules of conduct.  She further conceded that she addressed her communications to Susan Giannone as a means to conceal the fact that they actually were intended for an inmate, Michael Giannone.  In those correspondences, Hunter shared personal information with the Giannones as well as information regarding the federal penitentiary institution, specifically FCI Fort Dix, including a recent murder and suicide involving a food service employee, a riot during a prison blackout, the prison's deficient recall system, stolen knives from the prison's kitchen,

24

and a potential group inmate assault.[6]

Based on those facts and echoing the proposed notice of removal prepared by Moran, DeRosa explained in the termination letter, *inter alia*, that Hunter had lost the confidence of her supervisors and that her credibility had been compromised. Those findings, articulated and explained in the proposed notice of removal and the termination letter, are not arbitrary or capricious; rather, they are reasonable conclusions drawn from and supported by substantial evidence. Her qualifications and disagreements notwithstanding, Hunter's admissions, along with the correspondences themselves, demonstrate her misconduct. The content of those communications may reasonably be deemed as sensitive information.[7] That Hunter engaged in her relationship with the Giannones for about two years and ostensibly concealed the existence or nature of that relationship -- a relationship that Hunter apparently knew, or at least should have known, was improper -- are factors that exacerbate the severity of her misconduct.

_____

[6] During her arbitration hearing, Hunter denied that she volunteered that information to Michael Giannone, but admitted that she responded to him and confirmed the veracity of the information.

[7] Exercising his judgment, DeRosa observed in the termination letter that "[t]he information which [Hunter] provided to Inmate Giannone in these instances could have been used by inmates to cause, or perfect, a plan to breach the security of the institution." (Def. Mot., First Ruymann Decl., Exh. 1, MH 6).

On the other hand, Hunter argues that she had been entrusted with substantial responsibility during the pendency of her OIA investigation and that no mitigating factors were considered when determining her punishment.  First, the mere fact that Hunter was transferred to another position during her investigation does not undermine the eventual conclusion, verified upon the completion of the investigation, that she had compromised her credibility and integrity within the BOP and should be removed.  Second, as noted in the MSPB's Opinion, DeRosa pointed out multiple mitigating factors, such as Hunter's work history and clean disciplinary record, but decided that those factors did not outweigh other salient considerations.

Lastly, in her opposition brief to Defendant's Motion for Summary Judgment, Hunter contends that to resolve her non-discrimination claim, a jury must evaluate Warden DeRosa's credibility and decide whether his decision to terminate Hunter was animated by a retaliatory motive.  As explained *supra*, the Court finds no genuine issue of material fact regarding Hunter's retaliation claim under Title VII.  Consequently, for purposes of this motion, any questions surrounding DeRosa's credibility do not undermine the propriety of Hunter's termination, and the appropriateness of the review performed by the arbitrator and the MSPB and the validity of their decisions.

In the end, whether the MSPB and the arbitrator, or Warden

DeRosa before them, evaluated all of the arguments, evidence, and information to Hunter's liking -- or even the Court's -- is irrelevant.  Dispositive to this matter is that the agency based its decision on substantial evidence and drew reasonable conclusions from that evidence.  It is not for the Court to determine whether a better course of action could have been taken.  For purposes of this case, it is enough that the decision to terminate was not arbitrary or capricious, achieved through improper procedures, or predicated upon either a discriminatory basis or, alternatively, a total absence of evidence.  None of the arguments or objections raised by Hunter can disturb this conclusion.

Therefore, for the reasons stated above, Defendant is entitled to summary judgment on Hunter's non-discriminatory claim and the MSPB's decision is affirmed.

**IV.**   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.

Dated: April 26, 2011             /s/ NOEL L. HILLMAN
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

27